UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| Donna Dorsey Davis, | ) |
| as an individual and derivatively upon behalf | ) |
| of I-65 Properties, Inc. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO: 2:06cv766 |
| | ) |
| Richard M. Dorsey, as an individual, | ) |
| and CD& O, LLC, as a necessary party, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| and | ) |
| | ) |
| Richard M. Dorsey, | ) |
| Dorsey Motor Sales, Inc., | ) |
| and TD & O, Inc., | ) |
| | ) |
| Counter Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| Donna Dorsey Davis, | ) |
| | ) |
| Counter Defendant. | ) |

**Plaintiff/Counter-Defendant's Response in Opposition to Defendants/Counter-Plaintiffs' Motion for Summary Judgment and in the Alternative, Brief in Support of Plaintiff/Counter-Defendant's Cross Memorandum Brief in Support of Motion for Summary Judgment**

Comes now Plaintiff/Counter-Defendant, Donna Dorsey Davis, individually and derivatively, in the above-styled cause, and submit the following Response to Defendants/Counter-Plaintiffs' Motion for Summary Judgment and furthermore submits

1

a Cross Memorandum Brief in Support of Plaintiff/Counter-Defendant's Motion for Summary Judgment and states as follows:

## I. SUMMARY OF THE CASE AND UNDISPUTED FACTS

This case involves a brother-sister sibling relationship between Donna Dorsey Davis ("Davis") the Plaintiff, and her brother, Richard M. Dorsey ("Dorsey") the Defendant. Dorsey is the sole owner of Dorsey Motor Sales, Inc. ("DMS"). (Dorsey Depo. p. 40 line 13 and 14).

The sole asset of I-65 Properties, Inc. ("I-65") is approximately 9.606 acres of land located at the intersection of Exit 179 on Highway 65 and Cobbs Ford Road in Prattville, Alabama. (Dorsey Depo. p. 74 at line 15-17). The evidence shows the property was "sold" by DMS as a defensive maneuver at a time when a lawsuit had been filed against DMS. (Dorsey Depo. p. 30 at line 8 to p. 31 at line 5.). Davis testified from 1990 to 2007 she was only informed of one actual meeting of I-65 Properties, Inc. (Davis Depo. p. 155 at lines 5 to 9).

The Defendant, Dorsey, as the sole owner of DMS, was perfectly happy to let an "interest meter" run against Davis, the minority shareholder at an interest rate of 12% from 1990 until the filing of this action and continuing to accrue today. (Dorsey Depo. p. 42 at line 22 to 23, and p. 43 at line 1).

Other than trivial matters pertaining to cleaning of the property there has been no activity in this corporation other than holding title to the subject property in the respective ownership, Dorsey (70%) and Davis (30%).

The Defendant admits that over a period of years he allowed his eight year old son, Taylor, operating under a corporate entity TD&O to lease a billboard sign from I-65

Properties, Inc. for Six Hundred ($600.00) dollars per year. (Dorsey Depo. p. 133 at lines 1 to 8). Dorsey allowed TD&O to negotiate a lease with Lamar advertising earning his sons corporation Five Thousand Six Hundred ($5,600.00) dollars per year. (Dorsey Depo. p. 134 at lines 2 to 20).

Dorsey does not deny that during the seventeen year life of I-65 Properties, he failed to offer I-65 Properties a reasonable opportunity to purchase contiguous properties to the east and south of the subject, thus virtually surrounding the corporate asset with his own land holdings. (Dorsey Depo. p. 108 at lines 15 to 19). Dorsey's sole excuse for his egregious failure to represent his sister, the minority shareholder, is the corporation has no money. Dorsey admits he never gave his sister or the corporation the opportunity to buy the contiguous properties again stating that I-65 Properties was without funds. (Dorsey Depo. p. 116 at lines 2 to 23 and p. 117 at lines 1 to 21). Furthermore, I-65 had an option to purchase some of the contiguous lands and instead of notifying the minority stockholder of such option, Dorsey used the option to his benefit, formed another corporation ("CD&O"), and transferred I-65's option on the four tracts of surrounding land. (Dorsey Depo. p. 184 at lines 2 to 16).

After a 2005 meeting, Dorsey informed Davis she owed about Five Hundred Thousand Dollars for and old time barred promissory note executed by I-65 Properties to his corporation Dorsey Motor Sales, Inc. (Davis Depo. p. 69 at lines 5 to 11). This assertion left Davis in a state of shock, scared, and petrified. (Davis Depo. p. 69 at lines 6 and 7). At this point, Davis, who is a retired school teacher, became afraid she might lose her home and other assets (Davis Depo. p. 69 at lines 8 to 11).

**II. REPLY TO DEFENDANT'S ARGUMENTS AND CONCLUSIONS OF LAW**

**A. Jurisdiction is proper with this Court under 28 U.S.C. A. § 1332 (1975).**

Although the causes of action in the Plaintiff's Complaint are state law claims, this Court's jurisdiction is based on diversity according to 28 U.S.C.A. § 1332 (1975). The United States Code explicitly allows for this court to maintain jurisdiction by stating the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states… and a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Id* at 1332(a)(1) and (c)(1).

Davis is a resident citizen of the State of South Carolina. Dorsey is a resident citizen of the State of Alabama. The only asset both on the books and affecting the value of the stock of I-65 Properties, Inc. is a tract of land, the value of which greatly exceeds the $75,000.00 that is required by 28 U.S.C.A. § 1332 (1975). The purchase price of said property in 1991 being $250,000.00 and the debt that Dorsey states is owed by Davis well exceeds the requirement of the $75,000.00 limitation by being at half a million dollars. (Davis Depo. p. 65 at lines 5 and 6).

Furthermore, "a civil action wherein jurisdiction is founded only on diversity of citizenship may, except as provided by law, be brought only in a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C.A. 1391 (1975). Because Defendant is a resident citizen of Elmore or Autauga County, Alabama, and CD&O, LLC has its office of the registered agent in Elmore or Autauga County, Alabama venue is proper in the Middle District of Alabama, United States District Court.

With the two prongs having been met for diversity jurisdiction, this Court has the supplemental jurisdiction to decide the underlining state law claims as made by the Plaintiff in the Complaint. Jurisdiction is proper with this Court.

**B. Statute of Limitations did not begin to run until December 19, 2005 when Plaintiff was made aware of Defendant's wrong doings and therefore, is not barred from recovery.**

Since the inception of the Corporation in 1990, Dorsey has allowed Davis little to no participation in the management or allowed her to have any knowledge of the on-going business affairs of I-65. In Article VI, Section 1 of the By-Laws of the Corporation it states: "the regular meeting of the stockholders of this corporation shall be held at the general office of the corporation…on the first Monday in September of every year." (See Defendants' Exhibit "5": By-Laws of I-65 Properties, Inc.) According to Dorsey's recollection, he can not recall during the period of 1990 to 2000 any formal meetings ever being held, and if there were meetings, it would have been at a family gathering, not according to the terms of the by-laws. (Dorsey Depo. p. 172 at lines 1 to 23, and p. 173 at lines 1 to 7).

In Article VIII of the By-Laws, it specifically states that the books shall be audited once a year by a disinterested auditor and a balance sheet of gains and losses are to be presented at the directors meeting each year. (See Defendant's Exhibit "5": By-Laws of I-65 Properties, Inc., Article VIII). At present time, the only document purporting to be a balance sheet that was presented to Davis was in December of 2005. (See Defendants' Exhibit "15": Expense / balance sheet of December 19, 2005[1]).

---

[1] The Document Davis received was not a balance sheet and was not a profit and loss statement. It was a rough compilation of unknown origin of various expenses and does not rise to the stature of any of the requirements of the By-Laws. Further, Dorsey does not explain why no records were furnished between 1990 and 2005.

5

It wasn't until 2005 when Dorsey intentionally mislead Davis individually and as a minority stockholder to believe for his own purposes that she owed a debt to her brother's corporation DMS of a sum greater than $500,000.00. It is Dorsey's belief that he can hold his sister, personally liable for her 30% share of a debt payable from I-65 to DMS:

> Q. Okay. Is she, in your opinion, personally liable for you to be able to sue her personally?
> A. Yes.
> Q. She is?
> A. Yes
> Q. Do you think because she is a 30% stockholder of the corporation, that that makes her personally liable on the note?
> A. Yes.
> Q. She owes money – or at least her 30%, owes that money?
> A. We both owe the money.
> (Dorsey Depo. p. 203 at lines 10 to 16 and 22 to23; p. 204 at lines 1 to 3; p. 236 at lines 11 to 14).

Not only was all these statements intentional fraud in an effort to squeeze out Davis from her rightful property, but the Promissory Note was clearly barred from recovery by Ala. Code § 7-3-118. (1975). (See Defendants' Exhibit "3": Promissory Note of October 1, 1990). Dorsey has clearly stated that neither interest nor the principal has been paid by I-65 to DMS. Furthermore, Dorsey by his own admission to the Court states the minority shareholder personally "owes her portion of the debt that's been **accrued** over the 17 years that I-65 has existed," and DMS has never made a demand for payment on the debt. (Dorsey Depo. p. 206 at lines 10 to 12, p. 209 at lines 15 to 18; Dorsey Brief at page 23 at footnote 7, and page 27).

6

It wasn't until 2005 that Davis was concerned or had knowledge of any wrongdoing regarding the Promissory note until the stockholders' meeting in 2005. (Davis Depo. p. 26 at lines 16 to 20, p. 69 at lines 5 to 11). No matter if the Statute of Limitations is two years or six, Davis' stockholder derivative suit was properly filed on the 25th of August, 2006.

### C. Davis' Individual Claims are those of a Stock Holder Derivative Suit and are adequately pled as such under Fed. R. Civ. P. 23.1 and more accurately Ala. R. Civ. P. 23.1.

The *Alabama Rules of Civil Procedure* 23.1 states a derivative action is "brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it." The *Federal Rules of Civil Procedure* further defines rule 23.1 of a stock holder derivative action as "one or more shareholders or members [right] to enforce [that] which may properly be asserted by it."

In the case of *James v. James*, the Court held that Jerry James, who was a minority stockholder in a closely held corporation, was allowed to bring a stockholder derivative suit against his sibling for such claims as "oppression/squeeze out." 768 So. 2d 356 (2000). The Court found the majority shareholder had "illegally usurped corporate opportunities, and had unjustly enriched himself at the expense of the corporation" and not only did the "majority shareholder in a close corporation owe a duty to act fairly toward a minority shareholder," but because of the closeness of the relationship between the shareholders any demand would be futile. *Id*. at 358-360.

In the present case, in an effort to squeeze out Davis from I-65 Properties, Inc. Dorsey attempted to negate Davis' stock by telling her she personally owed a debt of half a million dollars. (Davis Depo. p. 69 at lines 5 to 11). Not only did Dorsey mislead his sister, but as majority stock holder of I-65, and owner of most of the surrounding land he tried to collect the promissory note from a minority stockholder who was not allowed to engage in any meetings for the first ten years of the corporation's existence. His sister was never given the opportunity to inspect corporate books or yearly audits as required; further, the promissory note is barred from collection after the ten year statute. Ala Code § 7-3-118 (1975).

Furthermore, Davis made a request of her brother regarding all financial statements over the past seventeen years, but because of faulty "accounting records" of the past, no further attempts were made pre-suit. (See Defendants' Exhibit "15": Accounting / balance sheet of 2005). Dorsey is the majority and controlling shareholder, president, and chairman of the Board of Directors, further attempts would have been futile or unavailing at the time. Davis as the Vice-President of I-65 has no duties enumerated to her under the By-laws, except she is allowed to take the role of the President in case the President is absent or disabled. (See Defendants' Exhibit "5": I-65 Properties, Inc. By-Laws, Article II).

Wherefore, Davis is the proper person as the only minority shareholder to bring a stockholder derivative suit under *A.R.C.P* 23.1 and *F.R.C.P.* 23.1, and as determined by the Court in *James v. James*, 768 So. 2d 356 (2000).

### III. PLAINTIFF/COUNTER-DEFENDANT'S CROSS CLAIM FOR SUMMARY JUDGMENT ON DEFENDANT/COUNTER-PLAINTIFF'S COUNTERCLAIM.

Comes now, Davis and submits the following Brief in Support of her Motion for Summary Judgment.

#### A. Undisputed Facts

On October 1, 1990, Dorsey as President of I-65 Properties executed a $250,000.00 promissory note to his company DMS for the purchase of property owned by I-65. (See Defendants' Exhibit "3": Promissory Note). The transfer from one of Dorsey's Corporations to I-65 was made as a defensive manover (sic: maneuver) during a time when DMS was engaged in litigation in an effort to protect such property. (Dorsey Depo. p. 30 at line 8 to p. 31 at line 5.) Upon questioning the reason for such transfer in a letter, I-65's accountant Alan Taunton reiterated such intent of DMS to Davis in 2000 and 2006. (See Defendant's Exhibit "9": February 17, 2000 Letter from Taunton to Davis; Defendant's Exhibit "17": February 3, 2006 Letter from Taunton to Lindsay B. Erwin). Davis had no reason to believe otherwise until Dorsey told her in December of 2005 she owed 30% of the promissory note personally. (Davis Depo. p. 26 at lines 16 to 20, p. 69 at lines 5 to 11).

During the applicable statutory period as provided by Ala. Code § 7-3-118 there has never been a request made for payment on the promissory note and the interest on the note has continued to accrue to present time. (Dorsey Depo. p. 206 at lines 10 to 12, p. 209 at lines 15 to 18). Dorsey admits, by and through his attorney, in his Brief in Support of Summary Judgment that no demand was ever made nor no monies have been paid towards the principal or interest on said note since its inception in 1990. (See Dorsey

9

Brief at page 23 at footnote 7, and page 27). Therefore, by the testimony of Dorsey set out above, and the admission of Dorsey's Attorney the exact burden of the statute has been illustrated by the Defendant.

### B. Standard of Review

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1294 (11th Cir.1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only disputes about those facts will preclude the granting of summary judgment. *Id.* A material fact is one "that might affect the outcome of the suit under governing law," and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Slomcenski v. Citibank, N.A.,* 432 F.3d 1271, 1277 (11th Cir.2005) (quoting *Hudgens v. Bell Helicopters/Textron,* 328 F.3d 1329, 1344-45 (11th Cir.2003)) ("In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.' "). Thus, the initial burden of proof rests on the movant. *Celotex,* 477 U.S. at 325; *Gonzalez,* 161 F.3d at 1294. This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be insufficient to permit the non-movant from carrying its burden of proof.

*Celotex,* 477 U.S. at 322-23. The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County, Georgia,* 684 F.2d 1365, 1369 n. 5 (11th Cir.1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 556 (5th Cir.1980)). Once the movant meets its burden under Rule 56, the non-movant must designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim, and my not rest upon the mere allegations or denials of the pleadings. FED. R. CIV. P. 56(e); *Johnson v. Board of Regents of University of Georgia,* 263 F.3d 1234, 1264 (11th Cir.2001).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *Johnson,* 263 F.3d at 1242-43; *Smith v. F.D.I. C.,* 61 F.3d 1552, 1562 n. 18 (11th Cir.1995) (on summary judgment, the court resolves all reasonable doubts about the facts in favor of the nonmovant). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

    **C.**    **Plaintiff/Counter-Defendant should be granted Summary Judgment on Defendant/Counter-Plaintiff's Cross-Claim because even if said promissory note was valid upon its inception, said note is barred from collection under Ala Code § 7-3-118. (1975).**

Alabama Code § 7-3-118(b) states:

> *Note payable on demand.* Except as provided in subsection (d) or (e), if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within six years after the demand. If no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of 10 years.

In numerous precedent cases, the Court has determined a promissory note made payable upon demand shall begin tolling its statute of limitations at the instance of execution. In the case of *Brown v. First National Bank of Montgomery,* the court ruled "in regard to a note payable on demand, the period of limitation is to be computed from the date of execution and delivery of the note." 75 So. 2d 141 (Ala. 1954). The Court gives the reason for the tolling to begin immediately is a demand could be made the day after signing said note for collection. *Esslinger v. Spragins Et al* 236 Ala. 508, 183 So. 401 (1938). The Promissory note in the instant case is of October 1, 1990. (See Defendants' Exhibit "3": Promissory Note). It was at that date the statute on the promissory note began running. The note is now clearly barred from collection statutorily and under Alabama case law.

As previously stated, all facts for barring have been previously listed, and it has been clear by Dorsey's Deposition that no demand has ever been made by DMS on the October 1, 1990 Promissory Note. (Dorsey Depo. p. 206 at lines 10 to 12, p. 209 at lines 15 to 18; Dorsey Brief at page 23 at footnote 7, and page 27). If such demand had been made, the Statute of Limitations would have began running for six-years from such date.

Secondly, because no demand was made, the promissory note is barred due to no principal or interest being paid during the ten year period after the execution of the note. (Dorsey Depo. p. 206 at lines 10 to 12, p. 209 at lines 15 to 18; Dorsey Brief at page 23 at footnote 7, and page 27). The promissory note of October 1, 1990 was barred from recovery as of October 1, 2000 since no demand had been made by DMS to I-65 Properties, Inc. during the ten year period. Further, in support of no principal or interest being paid the alleged balance sheet reflects such. (See Defendants' Exhibit "15": Expense/ balance sheet).

### D. Conclusion

Defendant, Dorsey has proved through his attorney of record and by his own admission that the counter-claim is barred by Ala. Code § 7-3-118. (1975). Furthermore, In Ala. Code § 7- 3-118, the official legislative explanation for time barring a demand note is given similarly to the situation before this Court:

> Some demand notes are not enforced because the payee has forgiven the debt. This is particularly true in family and other noncommercial transactions. A demand note found after the death of the payee may be presented for payment many years after it was issued. The maker may be a relative and it may be difficult to determine whether the note represents a real or a forgiven debt. Subsection (b) is designed to bar notes that no longer represent a claim to payment and to require reasonably prompt action to enforce notes on which there is default. (1996).

WHEREFORE, premises considered, Plaintiff/Counter-Defendant respectfully requests the Court Grant Plaintiff/Counter-Defendant's Motion for Summary Judgment and enter an Order and a finding that the October 1, 1990 Promissory Note from I-65 to

made to Dorsey Motor Sales, Inc. is barred from collection by virtue of Ala. Code § 7-3-118 (1975).

Respectfully Submitted this 9th day of April, 2007.

                                              //s// Lindsay B. Erwin
                                              Lindsay B. Erwin
                                              ASB-5299-Y59E
                                              Attorney for Plaintiff

Meacham, Earley & Fowler, P.C.
5704 Veterans Parkway
Columbus, Georgia 31904
(706) 576-4064

## CERTIFICATE OF SERVICE

      I hereby certify that on the  9   day of April, 2007, I electronically filed the foregoing with the Clerk of the Court using electronic filing system which will send information of such filing to the following:

    Clifford W. Cleveland
    Cleveland & Colley, P.C.
    P.O. Box 680689
    Prattville, AL 36068

    James E. Roberts, Esquire
    4908 Cahaba River Road, Suite 204
    Birmingham, AL 35243

                                              //s// Lindsay B. Erwin
                                             OF COUNSEL