IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

DONNA DORSEY DAVIS, as an    )
individual and derivatively  )
upon behalf of I-65          )
PROPERTIES, INC.             )
                             )
    Plaintiff,               )
                             )      CIVIL ACTION NO.
    v.                       )      2:06cv766-MHT
                             )         (WO)
RICHARD M. DORSEY,           )
                             )
    Defendant.               )

OPINION AND ORDER

    Plaintiff Donna Dorsey Davis brings this civil action

individually and derivatively on behalf of I-65

Properties, Inc. against defendant Richard M. Dorsey.

Davis asserts various state-law claims regarding Dorsey's

alleged mismanagement of I-65 and mistreatment of her as

minority shareholder.[1]    Davis asserts diversity

jurisdiction under 28 U.S.C. § 1332.    This case is now

---

    1.    Dorsey and two corporations he controls initially
asserted various state-law counterclaims against Davis.
After the pretrial hearing in this case, Dorsey dismissed
the counterclaims.

before the court on Dorsey's motion for summary judgment. For the reasons that follow, the motion will be granted in part and denied in part.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine

2

issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


## II. FACTUAL BACKGROUND

Viewed in the light most favorable to Davis, the admissible evidence reflects the following facts.  Dorsey and Davis, who are siblings, have been the sole shareholders of I-65 Properties, Inc. since that corporation was founded in 1990.  Dorsey is the majority and controlling shareholder, with 70 % ownership, and Davis is the minority shareholder, with 30 %.  Dorsey is

3

also president of the corporation and chair of the board of directors; Davis is vice-president.

I-65 was incorporated when Dorsey and his parents, who together owned and operated Dorsey Motor Sales, Inc., determined that the ownership of a vacant plot of land near Interstate 65 in Elmore County, Alabama should be transferred out of Dorsey Motor Sales and into the possession of a new entity. To that end, I-65 Properties, Inc. was incorporated on October 1, 1990, at which point it immediately purchased the vacant land from Dorsey Motor Sales for $ 250,000. The property sale was fully seller-financed with a promissory note from I-65 to Dorsey Motor Sales, at a 12 % interest rate, due and payable on demand.

Although the land was initially owned by Dorsey Motor Sales, a corporation in which Davis had no interest aside from the fact that it was wholly owned and operated by her parents and brother, Dorsey told Davis that their parents wanted to give them some of their inheritance early and had therefore determined that she should be a minority shareholder in I-65.

**4**

Davis did not initially object to her brother running I-65 exclusively. Dorsey and his father apparently had experience running Dorsey Motor Sales, whereas Davis pursued a career in education. Davis did make one request of Dorsey and her father regarding I-65: that they should inform her if she owed any money.

To date, the land I-65 purchased in 1990 remains almost entirely undeveloped and its only asset. I-65 has had very little revenue since its inception, and its expenses have been limited to basic maintenance and upkeep of the property. I-65 has made no payments, neither toward interest nor equity, on the promissory note held by Dorsey Motor Sales. (Since Davis and Dorsey's parents' deaths, Dorsey has been the president and controlling shareholder of Dorsey Motor Sales.)

Several events have occurred since 1990 that appear to be relevant to Davis's claims. Shortly after I-65 obtained the property, Dorsey and his parents pursued a financial deal whereby Nissan would lease I-65's land and install a car dealership on the property. In 1991, and in

preparation for the deal, Dorsey built a road through the property. However, the deal fell through and I-65 was never able to lease the land.

After the Nissan deal fell through, CD & O, LLC, a limited liability company owned by Dorsey and his wife and controlled by Dorsey, purchased several parcels of land nearby or adjacent to I-65's property. Although the record is somewhat murky on this point, it appears that I-65 obtained purchase options on the adjacent property, which it then sold to CD & O so that CD & O could purchase the property instead. CD & O's land purchases occurred in 1991.

At some point after the Nissan deal fell through, I-65 entertained another possible arrangement that involved opening a Cracker Barrel restaurant on the property. These negotiations, too, never amounted to an agreement.

In 1999, I-65 obtained a billboard permit and began a billboard-leasing agreement with TD & O, Inc., another company owned and controlled by Dorsey. TD & O leases the billboard from I-65 for $ 600 per year and subleases it to

6

an advertising company, Lamar Advertising, for $ 5,400 per year.  The billboard deal apparently continues to this day.

In 1999 or 2000, Davis gave her husband John H. Davis, Jr. power of attorney regarding her interest in I-65. Around this time the Davises began to take a more active interest in the affairs of I-65.  Davis's husband sought information and documentation regarding the corporation on her behalf from Dorsey and from I-65's accountant, J. Alan Taunton.  Dorsey and Taunton replied and provided most of the information Davis's husband requested.

During the course of that communication, the Davises suggested that the corporation look into refinancing the terms of the promissory note to obtain an interest rate more favorable than 12 %.  Dorsey replied that he could not see how the seller-financing constituted a conflict of interest on his part, but that he had no objection to Davis obtaining commercial-mortgage financing at a lower interest rate.  It is undisputed, however, that Davis did

not follow up on this idea and did not actively seek to change the terms of the financing arrangement.

The Davises' inquiries continued in 2003. Taunton, at Dorsey's direction, sent Davis copies of I-65's income tax returns for the previous five years.

In December 2005, a board or shareholders meeting appears to have been the catalyst for the instant litigation. When the Davises arrived at the meeting, Dorsey was present along with an attorney, who tape-recorded the meeting. Davis's husband was told he was not permitted inside the meeting, so Davis entered alone. At that point, Dorsey handed Davis several documents and told her that she owed him over $ 500,000. Dorsey told Davis that I-65 was heavily in debt, and that Davis, as 30 % shareholder of the corporation, was responsible for her share. After Davis left the meeting, she was "in a state of shock and scared and petrified." Davis Depo. (doc. no. 43-2) at 69.

Frightened that she could lose her home, Davis called Dorsey and asked him if she could sell him her I-65 stock

in exchange for one dollar and forgiveness of the debt. Dorsey told Davis that "it sounded good to him," <u>id</u>., but that he would need to check with his attorney and accountant.  Approximately one week later, having not heard back from her brother and having consulted an attorney, Davis faxed Dorsey a letter rescinding her verbal offer.  Dorsey replied with a letter of his own, suggesting that "it is time to stop fighting and move ahead with our lives."  Def. Ex. 16 (doc. no. 22-17).

Apparently that did not occur.  Davis's attorney followed up with a request for additional information and documentation regarding I-65, and Taunton sent a letter offering Davis "anything she asks for that we may have relative to this company."  Def. Ex. 17 (doc. no. 22-18). This lawsuit soon followed.


## III. DISCUSSION

Davis, both individually and derivatively on behalf of I-65, brings seven state-law claims against Dorsey: oppression and squeeze-out; breach of fiduciary duty to

**9**

shareholder; breach of fiduciary duty to I-65; negligence; willful and wanton conduct; conversion; and fraud.  Dorsey asserts several challenges to these claims: lack of subject-matter jurisdiction; statute of limitations; Davis's failure to bring all her claims derivatively on behalf of the corporation; non-compliance with Federal Rule of Civil Procedure 23.1; and the claims' lack of merit as a matter of law.

The court will begin by addressing the threshold question of subject-matter jurisdiction.  Next, the court will assess each of Davis's claims and Dorsey's defenses to them.

## A. Jurisdiction

Having previously denied Dorsey's motion to dismiss for lack of subject-matter jurisdiction, the court again rejects his jurisdictional challenge, this time with the following comments.

Davis has properly invoked diversity jurisdiction under 28 U.S.C. § 1332.  That statute requires 'complete

diversity,' which means that no party on one side of the suit can be from the same State as any party on the other side.  Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806).  Here, Davis is a citizen of South Carolina, and Dorsey is a citizen of Alabama.

Although Dorsey does not raise the issue of I-65's citizenship, the court adds that the derivative nature of several of Davis's claims (as explained later) does not destroy diversity jurisdiction.  In a derivative lawsuit, the corporation is the "real party in interest," Liddy v. Urbanek, 707 F.2d 1222, 1224 (11th Cir. 1983), and I-65 is deemed a citizen of Alabama, see 28 U.S.C. § 1332(c) (corporation shall be deemed a citizen of all States by which it has been incorporated and of the State where it has its principal place of business).  However, I-65's status as a citizen of Alabama does not destroy diversity jurisdiction because "the corporation properly remains a defendant in a stockholder's derivative action whenever the corporate management is 'antagonistic' to the plaintiff shareholder."  Liddy, 707 F.2d at 1224.  As the

court observes below, Davis erred in failing to join I-65 as a necessary party.[2]  For now, it is sufficient to note that I-65's interest in this case, whether it is a named party or not, does not deprive this court of subject-matter jurisdiction.

Diversity jurisdiction under § 1332 also requires that the amount in controversy exceed $ 75,000, exclusive of interest and costs.  "[W]here jurisdiction is based on a claim for indeterminate damages ... the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003).  Here, the dispute concerns Dorsey's alleged mismanagement of a corporation whose asset is property purchased for $ 250,000 in 1990 and whose liabilities, 30 % of which Dorsey allegedly would impose on Davis personally, allegedly exceed $ 1.5 million.  By way of relief, Davis asks the court to set

_____

2.    Subsection III.B.3, infra.

aside the mortgage between I-65 and Dorsey Motor Sales,
the value of which greatly exceeds $ 75,000.  The court
therefore concludes that the amount-in-controversy
requirement of § 1332 is met and that this court has
subject-matter jurisdiction over this case.


**B. Davis's Claims**

**1. Oppression and Squeeze-Out**

Davis's first claim is for oppression and squeeze-out.
This cause of action was first recognized by the Alabama
Supreme Court in <u>Burt v. Burt Boiler Works, Inc.</u>, 360
So.2d 327 (Ala. 1978), and has been repeatedly reaffirmed
since then.  <u>Brooks v. Hill</u>, 717 So.2d 759 (Ala. 1998);
<u>Stallworth v. AmSouth Bank</u>, 709 So.2d 458 (Ala. 1997);
<u>Michaud v. Morris</u>, 603 So.2d 886 (Ala. 1992); <u>Ex parte
Brown</u>, 562 So.2d 485 (Ala. 1990); <u>Galbreath v. Scott</u>, 433
So.2d 454 (Ala. 1983).  Although Dorsey argues that
Davis's oppression-and-squeeze-out claim should be
dismissed as a matter of law because she brings it
directly as an individual rather than derivatively on

behalf of the corporation, in fact Alabama courts recognize oppression and squeeze-out as a distinctly individual and direct cause of action.

As the Alabama Supreme Court explains in <u>Brooks v. Hill</u>, corporate governance in a close corporation presents a distinct risk that a controlling shareholder will manipulate the corporate structure to harm minority interests without necessarily harming the corporation itself. "In forming a close corporation, the shareholders themselves naturally often view their relationship as akin to that of partners, who will each share equitably in the income derived from the enterprise. However, the corporate form that governs their legal relationship assigns control of the corporation to the majority, who, by virtue of that power, would be able to frustrate the minority's basic expectation to share proportionally in corporate gains by excluding the minority from salaried employment as officers, directors, or employees; refusing to declare dividends; and eliminating other privileges that might flow to the minority from the corporation."

**14**

Brooks, 717 So.2d at 765 (internal citations, quotation marks, brackets, ellipses, and footnote omitted). But unlike a minority interest in a partnership, a minority shareholder cannot easily exit from a disagreeable corporate relationship by dissolving the corporation. And unlike a disgruntled holder of stock in a publicly traded corporation, a minority shareholder in a close corporation frequently cannot find an investor to purchase his stock, other than the controlling shareholder. Thus, the oppressive and unfair 'squeeze-out': the majority shareholder uses its right of control "to put the minority shareholder into a situation where he had only two, equally unappealing, options: '(1) hold his stock in perpetuity while receiving no earnings thereon, or (2) sell out at an unreasonably low price to the majority shareholder.'" Id. at 766 (quoting Andrew P. Campbell, Litigating Minority Shareholder Rights and the New Tort of Oppression, 53 Ala. Law. 108 (1992)). The oppression-and-squeeze-out cause of action is corporate law's remedy for this "specific kind of unfairness, whereby the majority of

the shareholders in a close corporation is able to use its right of control to exert pressure upon, i.e., to 'squeeze,' the minority by reducing or eliminating its income, coupled with the minority's practical inability to withdraw." Id.

In this case, the record does not indicate that Dorsey has used his position of control at I-65 to frustrate Davis's expectation to share proportionally in corporate gains. Quite simply, the record does not reflect that there have been any corporate gains. Therefore, under the circumstances, Davis cannot complain that Dorsey has not declared dividends, provided her with salaried employment, or eliminated other privileges that Davis might expect from owning a share of I-65. It is important to note that, although Davis might allege that Dorsey's mismanagement of the corporation caused the lack of corporate gains, such allegations are the basis for a derivative claim on behalf of the corporation, not a direct squeeze-out claim. "[A] minority shareholder cannot parlay a wrong committed primarily against the

**16**

corporation, which gives rise to a derivative claim only, into a personal recovery of damages under a squeeze-out theory by simply stating that the injury to the corporation is also 'unfair' to him as well." Stallworth, 709 So.2d at 467.   Along the same lines, Davis may disagree with some of the business decisions Dorsey has made in his capacity as president and chair of the board of directors, but the fact that the majority will not accede to the wishes of the minority on matters of corporate management does not, by itself, give rise to a claim of oppression and squeeze-out.   Id. at 468.   In order to make out a squeeze-out claim, Davis must demonstrate that Dorsey used his position of control in a manner that harmed her as a shareholder independent of anything that Dorsey did to harm the corporation itself.

It might be argued that Dorsey attempted a 'squeeze-out' when he told Davis that she was personally liable for the debt of the corporation in proportion to her share of ownership.   It is understandable why Davis would feel aggrieved by this incident: Dorsey's statement

**17**

was almost certainly false, as it is a universally accepted basic axiom of corporate law that a corporation's shareholders are not personally liable for its debts. It is truly difficult to understand how Dorsey could have been unaware of this defining feature of the corporation as a legal entity, but evidently Davis did not misunderstand him at the meeting because he has continued to insist on her personal liability in his deposition and in recently withdrawn counterclaims. However, even if Davis is alleging that Dorsey, by threatening her with personal liability for the corporation's debt, intended to induce her into offering to sell her shares for an unreasonably low price, that allegation does not amount to an actionable claim for squeeze-out. Because Davis rescinded her offer before Dorsey accepted it, Davis incurred no damages.

Furthermore, even if the deal had gone through, Davis's cause of action would be based on Dorsey's material misrepresentation regarding her liability for the corporate debt, which is entirely unrelated to his powers

as controlling shareholder. <u>See</u> <u>Brooks</u>, 717 So.2d at 767 ("One could certainly deem it 'unfair' for a majority shareholder of a close corporation to misrepresent a material fact to a minority shareholder in connection with a purchase of his shares. But while such wrongdoing suggests that a minority shareholder might have been defrauded, it does not suggest that the minority shareholder has also been 'squeezed out' of the corporation.... [T]he duty to refrain from making false representations does not spring from the vulnerability of a minority shareholder in the context of a close corporation.").

In sum, although the oppression-and-squeeze-out cause of action recognizes that minority shareholders have "a right to fairness by the majority," <u>Michaud</u>, 603 So.2d at 888, the scope of that right is limited to the majority's abuse of its right of control. The oppression-and-squeeze-out claim, in other words, does not extend to the majority's mismanagement of or harm to the corporation itself, nor to the majority's unfair acts toward the

minority that do not stem from the power of control. Here, Davis points to no evidence in the record that Dorsey abused his position as controlling shareholder to take any action against her that might give rise to an oppression-and-squeeze-out claim. Accordingly, summary judgment will be granted on count 1 of Davis's complaint.

## 2. Fiduciary Duty to Shareholder

Davis's second claim is that Dorsey breached his fiduciary duty to her as minority shareholder. This court is unaware of any fiduciary duty owed to shareholders individually, as distinct from the fiduciary duty owed to the corporation itself, other than the fiduciary duty to shareholders recognized in the cause of action for oppression and squeeze-out. See Burt, 360 So.2d at 331-32. Therefore, for the same reasons the court grants summary judgment on Davis's oppression-and-squeeze-out claim, summary judgment will be granted on count 2 of Davis's complaint as well.

20

### 3. Fiduciary Duty to Corporation

Davis's third claim, brought derivatively on behalf of I-65, is that Dorsey breached his fiduciary duty to the corporation.  At the outset, and even though Dorsey has not raised this point, the court notes that I-65 itself must be joined as a defendant in this case.  See Liddy v. Urbanek, 707 F.2d 1222, 1224 (11th Cir. 1983) ("There is no question that a corporation is an indispensable party in a derivative action brought by one of its shareholders.").  However, rather than reject Davis's derivative claim outright, the court will permit Davis to amend her pleading to join I-65 as a party.  Cf. 2 O'Neal & Thompson, Close Corporations and LLCs: Law & Practice § 9:22, at 9-133 (rev. 3d ed. 2004) ("Courts need not ignore the reality that the litigation is really a dispute among shareholders ... when the only interested parties are two individuals or sets of shareholders, one who is in control and the other who is not.").  Late joinder of I-65 will result in no prejudice to Dorsey or I-65, nor will it, as explained earlier, destroy diversity jurisdiction.

Generally speaking, a director or officer owes both a duty of care and a duty of loyalty to the corporation. Richard A. Thigpen, <u>Alabama Corporation Law</u> § 10:2 (3d ed. 2003); <u>see also</u> <u>Massey v. Disc Mfg., Inc.</u>, 601 So.2d 449, 456 (Ala. 1992). Because Davis's next claim is for negligence, the court will treat count 3 as a claim for a violation of the duty of loyalty and count 4 as a claim for a violation of the duty of care. <u>See</u> Thigpen, <u>supra</u>, § 10:2 ("duty of care is essentially a negligence cause of action").

The duty of loyalty is the "duty to act honestly for the corporation's best interest and to avoid acts of self-dealing." <u>Id</u>. § 10:12. "[A]n officer-director of a corporation owes a duty of managing the corporate affairs honestly and impartially and he may not achieve personal advantage, profit, or gain from his position." <u>Jefferson County Truck Growers Ass'n v. Tanner</u>, 341 So.2d 485, 487 (Ala. 1977).

Two types of claims frequently arise under the duty of loyalty: the conflicting-interest transaction and the

22

corporate-opportunity doctrine.  A conflicting-interest transaction occurs when a director (or a close relation to a director or an entity in which the director has a financial interest) is a party to a transaction effected by the corporation.  1975 Ala. Code § 10-2B.8.60; <u>see Jones v. Ellis</u>, 551 So.2d 396, 403-04 (Ala. 1989); <u>see also</u> 19 C.J.S. <u>Corporations</u> § 596 (2007); Thigpen, <u>supra</u>, § 10:12.  The corporate-opportunity doctrine is invoked when a director or officer appropriates for personal benefit a business opportunity that belongs to or should have been offered to the corporation.  <u>Banks v. Bryant</u>, 497 So.2d 460, 463-65 (Ala. 1986); <u>Morad v. Coupounas</u>, 361 So.2d 6, 8-9 (Ala. 1978); <u>see also</u> 19 C.J.S. <u>Corporations</u> § 604; Thigpen, <u>supra</u>, § 10:17.  In other words, the conflicting-interest transaction calls into question the director or officer's loyalty regarding a transaction that the corporation did make but possibly should not have made; whereas the corporate-opportunity doctrine calls into question the director or officer's loyalty regarding

a transaction that the corporation did not make but possibly should have made.

### a. Promissory Note

The court first addresses the promissory note between I-65 and Dorsey Motor Sales. Dorsey stands to benefit personally from the interest on the loan owed by I-65 to Dorsey Motor Sales. In <u>Jones</u>, 551 So.2d at 403-04, the Alabama Supreme Court recognized the conflict of interest inherent in a similar arrangement involving a loan, at 12 % interest, by the director's corporation to the plaintiff corporation. Therefore, the court has no trouble concluding that the promissory note is a conflicting-interest transaction for Dorsey.

However, Dorsey raises a statute-of-limitations defense. There is a two-year statute of limitations on a cause of action for breach of fiduciary duty. <u>Hensley v. Poole</u>, 910 So.2d 96, 101 (Ala. 2005); <u>Sys. Dynamics Int'l, Inc. v. Boykin</u>, 384 So.2d 419, 419 (Ala. 1996); 1975 Ala. Code § 6-2-38(*l*). Dorsey argues that, because the

**24**

promissory note was executed in 1990, Davis's claim arising from it is time-barred.

The court agrees with Dorsey that this claim is time-barred. Although the promissory note was executed in 1990, the statute of limitations was arguably tolled by Davis's ignorance of its terms. See Jefferson County Truck Growers Ass'n v. Tanner, 341 So.2d 485, 488 (Ala. 1977) (statute of limitations does not run against claim based on a self-dealing director who is "responsible for the concealment of facts upon which a claim could be based and where knowledge of those facts were solely within the director's control"); see also Belcher v. Birmingham Trust Nat'l Bank, 348 F. Supp. 61, 82 (N.D. Ala. 1968) (Grooms, J.) ("A corporate officer charged with wrongdoing of which the other directors and officers know nothing and whom he knows to be ignorant of the wrongdoing cannot escape liability under the shelter of the statute of limitations." (internal quotation marks omitted)). But this argument, even if compelling, does not carry the day for Davis. Viewing the facts in the light most favorable

to her, she was aware of the promissory note, its high interest rate, and Dorsey's conflict of interest in 2000, when Davis's husband inquired on her behalf about refinancing the loan and Dorsey replied to Davis stating that he had no objection to refinancing if a more favorable interest rate could be obtained. Davis admits that she did not pursue the issue and did not actively seek to change the terms of the financing arrangement. Therefore, even if Davis's cause of action did not accrue until she learned that Dorsey was on both sides of the financing arrangement, she did learn of this fact in 2000. Accordingly, Davis's claim as it pertains to the promissory note is time-barred.[3]

--------------------

3. At the pretrial hearing on this case, Davis's attorney raised the somewhat different argument that Dorsey's insistence that the note is still payable on demand is incorrect as a matter of law. See 1975 Ala. Code § 7-3-118(b) (ten-year statute of limitations on promissory note where debtor has paid no principal or interest and creditor has not demanded such). Although this point was briefed in the context of Dorsey's recently withdrawn counterclaims and not in the specific context of Dorsey's fiduciary duty to I-65, Dorsey's insistence that the note is still good arguably represents a breach of his duty to I-65 because of his

(continued...)

## b. CD & O Land Purchase

The court next addresses CD & O's purchase of several parcels of land nearby or adjacent to I-65's property. The question is whether those purchases violated the corporate-opportunity doctrine. "Stated succinctly, the rule is this: 'Corporate personnel may not for personal gain divert unto themselves the opportunities which in equity and fairness belong to their corporation.'" <u>Banks v. Bryant</u>, 497 So.2d 460, 465 (Ala. 1986) (quoting H. Henn, <u>Handbook of the Law of Corporations</u> § 237 (2d ed. 1970)). Unfortunately, that succinct statement of the

_____

(...continued)

**conflicting interest regarding the note. However, for the same reasons Davis's claim regarding the 12 % interest rate is barred by the two-year statute of limitations on fiduciary-duty claims, any claim regarding his failure to recognize a limitations period on the validity of the note itself is time-barred as well. Assuming without deciding that a demand for payment on the note would be time-barred ten years after it was issued, Davis's cause of action against Dorsey regarding his alleged fiduciary duty to I-65 not to cancel the note accrued in 2000 and expired in 2002, before this lawsuit commenced. Davis also asks this court to enter a declaratory judgment that the note is invalid, but the court is without power to do so because Davis did not join Dorsey Motor Sales, the holder of the note, as a defendant to this action.**

corporate-opportunity doctrine does not answer the most relevant question here: whether the sale of the land was, in fact, a corporate opportunity which in equity and fairness belonged to I-65.

The Alabama Supreme Court has noted that the "presence or absence of any single factor is not determinative of the issue of corporate opportunity." Morad, 361 So.2d at 9 (quoting Paulman v. Kritzer, 219 N.E.2d 541 (Ill. 1966)); see also Banks, 497 So.2d at 465 (attributing quote to 3 W. Fletcher, Cyclopedia of the Law of Private Corporations § 861.1 (perm. ed. 1975, cum. supp. at 34)). In its most extended discussion on corporate opportunity, the Alabama Supreme Court approved of the following statement of the rule:

> "When acting in good faith, a director or officer is not precluded from engaging in distinct enterprises of the same general class of business as the corporation is engaged in; but he may not wrongfully use the corporation's resources therein, nor may he enter into an opposition business of such a nature as to cripple or injure the corporation.... [D]irectors, officers, or agents, while ostensibly acting for

28

the company, are not at liberty to divert to their own favor, or for the benefit of competitive corporations, business which should properly belong to the company which they represent; and this is true, even though their company is unable to finance the transaction, and although the directors, in good faith and because of such financial inability, have rejected the proposition for the corporation and have accepted it for themselves, using their own funds exclusively...."

Banks, 497 So.2d at 463 (quoting 19 C.J.S. Corporations § 785 (1940)).

In this case, viewed in the light most favorable to Davis, the evidence reflects that I-65 obtained the option to purchase certain adjacent or nearby properties and that Dorsey, using his control of I-65, transferred those options to CD & O, a corporation he owned with his wife, so that CD & O could exercise the options, purchase the property, and pursue business interests thereon. See Dorsey Depo. (doc. no. 43-3) at 96, 183-90. Dorsey did not inform Davis of the opportunity to purchase the land.

Based on these facts, the court cannot grant summary judgment on Davis's claim for breach of fiduciary duty as

it pertains to the CD & O land purchase.  Because I-65 held purchase options on the adjacent land, it had an interest or expectancy in the opportunity to purchase the surrounding properties.  <u>See</u> 19 C.J.S. <u>Corporations</u> § 606. Dorsey used the resources of I-65--namely, the purchase options--to divert that opportunity to his other corporation, CD & O.  Where the director or officer uses the resources of the corporation to obtain and take advantage of an opportunity for himself, he has breached his duty of loyalty under the corporate-opportunity doctrine.

Dorsey argues that he was not required to inform Davis of the opportunity because I-65 did not have the financial resources to purchase any property.  The law does not support Dorsey's position.  <u>Banks</u>, quoting 19 C.J.S. <u>Corporations</u>, <u>supra</u>, § 785, states that the corporate opportunity applies "'even though [the] company is unable to finance the transaction.'" 497 So.2d at 463.  And the <u>Fletcher Cyclopedia of the Law of Corporations</u>, while recognizing that "the effect of financial inability varies

30

from one jurisdiction to another," states that "courts are unlikely to permit an officer to exploit the opportunity without full disclosure" to the corporation's disinterested directors. 3 Wm. Meade Fletcher, <u>Fletcher Cyclopedia of the Law of Corporations</u> § 862.10, at 307-08 (perm. ed. 2002). <u>See also</u> <u>id</u>. § 862.05, at 304 ("The director must disclose the existence of the opportunity to the [disinterested] directors and <u>let them decide</u> whether the corporation will pursue or reject the opportunity.... Whether or not a valid corporate rejection occurs is contingent upon full disclosure of all material facts and circumstances, including the fiduciary's interest in personally taking the opportunity." (emphasis added)); <u>id</u>. § 862.10, at 308 ("mere financial inability is inadequate to exonerate an executive who appropriates an opportunity"); <u>id</u>. § 861.10, at 279 ("If a fiduciary <u>uses corporate assets</u> to develop a business opportunity, the fiduciary will be estopped from denying that it was a corporate opportunity, regardless of the corporation's ability to exploit it." (emphasis added)). Here, Dorsey

31

used I-65's assets--namely, the purchase options--for his own benefit by transferring them to his other corporation, CD & O, without fully disclosing to Davis the nature of the opportunity or the circumstances under which he was seizing that opportunity for himself.  Given those facts, Dorsey cannot insulate himself from liability by arguing that I-65 lacked the financial resources to exercise the purchase options itself.

Before denying summary judgment on the claim regarding CD & O's purchase of adjacent property, the court must address two additional arguments Dorsey makes.  First, Dorsey raises the statute-of-limitations defense.  The court concludes that Dorsey's statute-of-limitations defense is not supported by the record.  Dorsey's brief in support of summary judgment does not provide a citation to the record that specifically demonstrates that Davis knew or had reason to know that Dorsey usurped a corporate opportunity by causing CD & O to purchase the options and the nearby lands, and in fact Davis states she was unaware of these facts.  Although Alabama law allows the statute

of limitations to be tolled only in cases of fraud, <u>Henson v. Celtic Life Ins. Co.</u>, 621 So.2d 1268, 1274 (Ala. 1993) (citing 1975 Ala. Code § 6-2-3), courts have noted that where there is a "fiduciary relation between the parties, imposing the moral and legal duty to disclose," that duty "may render silence fraudulent." <u>Belcher</u>, 348 F.Supp. at 61 (tolling the limitations period and quoting <u>Fletcher v. First Nat'l Bank of Opelika</u>, 11 So.2d 854, 860 (Ala. 1943) and <u>Hudson v. Moore</u>, 194 So. 147, 149 (Ala. 1940)); <u>see also</u> Thigpen, <u>supra</u>, § 11:12 (stating that 1975 Ala. Code § 6-2-3 "is of special interest, in view of the frequent characterization of actionable corporate misconduct by Alabama cases as 'fraud or maladministration.'"); Fletcher, <u>supra</u>, § 861.10, at 280-81 ("Since a director is under a duty to inform the corporation of the full circumstances of the transaction, mere disclosure of the transaction, without revealing the surrounding circumstances, is not sufficient, and failure to make complete disclosure constitutes constructive fraud, thereby tolling the statute of limitations."). Here,

because Dorsey's failure to disclose the facts surrounding the CD & O purchase would toll the statute of limitations on Davis's fiduciary-duty claim, there is a genuine issue of material fact regarding the statute-of-limitations defense that precludes the court from granting summary judgment.

Second, Dorsey argues that Davis did not comply with the requirements of Rule 23.1 of the Federal Rules of Civil Procedure,[4] which sets forth the procedural pleading requirements for, among other things, the substantive state-law rules of 'pre-suit demand' and 'demand futility': "Before a shareholder can be awarded damages on a derivative claim, the shareholder must make a presuit demand on the board of directors of the corporation to correct the wrongs alleged, so that the corporation can deal with the problems internally if possible.  However,

_____

4.    "In a derivative action ..., the complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ. P. 23.1.

34

if the demand on the directors would be futile, then the demand requirement is excused." <u>James v. James</u>, 768 So.2d 356, 360 (Ala. 2000); <u>cf</u>. 5 James Wm. Moore, <u>Moore's Federal Practice</u> § 23.1.04[2] (3d ed. 2007) (federal courts interpret Rule 23.1 in accordance with state substantive law). Here, it is undisputed that Davis did not make a pre-suit demand, so the question is whether she can demonstrate demand futility. The Alabama Supreme Court has held that "to show futility the shareholder or policyholder must demonstrate such a degree of antagonism between the directors and the corporate interest that the directors would be incapable of performing their duty." <u>Elgin v. Alfa Corp.</u>, 598 So.2d 807, 815 (Ala. 1992). In its assessment, "a court may consider evidence underlying the contention that a majority of the directors are wrongdoers against whom the action is based in support of the plaintiffs' argument of futility." <u>Id</u>. "Generally, the requirement is deemed satisfied if the directors or a majority thereof are shown to have been under the control of the alleged wrongdoers." Thigpen, <u>supra</u>, § 11:8, at

35

537 (citing <u>Goldman v. Jameson</u>, 275 So.2d 108 (1973)).
Because the evidence, viewed in the light most favorable
to Davis, is that Dorsey controlled the corporation
entirely and engaged in self-dealing, the court concludes
that any pre-suit demand by Davis on Dorsey would have
been futile.  Accordingly, Davis may proceed on her claim
regarding CD & O's purchase of adjacent lands.


### c. TD & O Billboard Lease

The next duty-of-loyalty issue relates to TD & O's
billboard lease on I-65's property.  The facts surrounding
TD & O were not alleged in the complaint; they emerged in
deposition testimony, and Davis marshaled them in her
brief opposing Dorsey's motion for summary judgment.
Because these facts form a similar basis for the
derivative fiduciary-duty claim as the promissory-note and
CD & O allegations, the court will consider them as part
of her derivative fiduciary-duty claim.

TD & O, another company controlled by Dorsey, leases
a billboard from I-65 for $ 600 per year and subleases it

to an advertising company, Lamar Advertising, for $ 5,400 per year.  Like the promissory note, this agreement represents a conflicting-interest transaction.  Dorsey, as the sole shareholder of TD & O, personally benefits from the transaction in which TD & O pays I-65 only $ 600 for the right to sublease the billboard for $ 5,400.  Dorsey stands on both sides of the contract and evidently has the ability to proportion Lamar's rental fee between I-65 and TD & O as he sees fit.

Under the Revised Alabama Business Corporation Act, a conflicting-interest transaction is permissible if (1) it is approved by a majority of disinterested and fully-informed directors, (2) it is approved by a majority of disinterested and fully-informed shareholders, or (3) "[t]he transaction, judged according to the circumstances at the time of commitment, is established to have been fair to the corporation."  1975 Ala. Code § 10-2B-8.61(b).  Because I-65 has only two directors and two shareholders, it is not possible that a majority of disinterested directors or shareholders approved the TD & O

transactions.  The question, then, is whether the terms of the lease are fair to the corporation.  Although it is possible that Alabama courts have never expressly allocated the burden of proof in demonstrating fairness to the corporation, traditionally that burden rests with the director or officer defending the conflicting-interest transaction.  <u>E.g.</u>, <u>Pepper v. Litton</u>, 308 U.S. 295, 306 (1939) (the burden is on the director or stockholder whose transactions with the corporation are challenged "not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein."); <u>Kahn v. Lynch Communication Sys., Inc.</u>, 638 A.2d 1110, 1115 (Del. 1994) ("A controlling or dominating shareholder standing on both sides of a transaction, as in a parent-subsidiary context, bears the burden of proving its entire fairness."); <u>see also</u> <u>Phoenix Airline Servs. v. Metro Airlines</u>, 397 S.E.2d 699, 703 (Ga. 1990).

The court can find no arguments in Dorsey's briefs, nor evidence in the record, satisfying his burden to

demonstrate that the transactions with TD & O are fair to I-65. Indeed, absent evidence to the contrary, a markup from $ 600 to $ 5400 appears on its face to be quite unfair. Based on these facts, the court concludes that summary judgment is due to be denied on Davis's claim for breach of fiduciary duty as it pertains to the billboard lease.

Furthermore, having already addressed the statute of limitations and demand futility, the court readopts its conclusions on those issues and finds that they do not preclude Davis from proceeding on this claim. With respect to the statute of limitations, Dorsey had a fiduciary duty to disclose his conflicting-interest transaction with TD & O, and the record does not indicate that he did so. As for demand futility, Dorsey's domination of the corporation and direct responsibility for the wrongdoing, as reflected by the evidence viewed in the light most favorable to Davis, would have made any pre-suit demand by Davis futile. Accordingly, Davis may proceed on her claim regarding TD & O's billboard lease.

### d. Summary

In sum, and viewing the facts in the light most favorable to Davis, the court concludes that Davis's fiduciary-duty claim regarding Dorsey Motor Sales's promissory note is time-barred, but that there are genuine issues of material fact as to whether Dorsey breached his fiduciary duty of loyalty to I-65 regarding CD & O's purchase of nearby land and TD & O's billboard lease. Accordingly, summary judgment on count 3 will be granted with respect to the promissory note and denied with respect to the CD & O land purchase and TD & O billboard lease.

### 4. Negligence

Davis's fourth claim is a derivative claim on behalf of the corporation for negligence. Davis's complaint indicates that the transactions and allegations at issue in her negligence claim are the same as in her derivative fiduciary-duty claim. The court has already analyzed three sets of allegations--the promissory note, the CD & O

**40**

land purchase, and the TD & O billboard lease--in terms of Dorsey's duty of loyalty to I-65.  The question is whether these acts also give rise to a derivative-negligence claim.  The court concludes that they do.

The Alabama legislature has designated the duty of care owed by directors and officers to the corporation: they must exercise their duties in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner they believe to be in the best interests of the corporation. 1975 Ala. Code §§ 10-2B-8.30, -8.42.  When shareholders allege a violation of the duty of care, defendant directors and officers are protected by the so-called business-judgment rule: "If in the course of management, directors arrive at a decision, within the corporation's powers, for which there is a reasonable basis, and they act in good faith, as the result of their independent discretion and judgment, and uninfluenced by any consideration other than what they honestly believe to be the best interests of the corporation, a court will not

**41**

interfere with internal management and substitute its judgment for that of the directors to enjoin or set aside the transaction or to surcharge the directors for any resulting loss." Roberts v. Alabama Power Co., 404 So.2d 629, 631 (Ala. 1981), quoted with approval in Hensley v. Poole, 910 So. 2d 96, 104 (Ala. 2005), and Michaud v. Morris, 603 So.2d 886, 888 (Ala. 1992).

The business-judgment rule, however, does not operate to protect self-dealing by directors and officers. 3A Fletcher, supra, § 1040; Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 360-61 (Del. 1993); see also Jones v. Ellis, 551 So.2d 396, 400-01 (Ala. 1989); Ingalls Iron Works Co. v. Ingalls Found., 98 So.2d 30, 39 (Ala. 1957). In other words, if the defendant has engaged the corporation in a conflicting-interest transaction or has usurped a corporate opportunity, the business-judgment rule will not bar a claim based on the duty of care.

The Supreme Court of Delaware has described the business-judgment rule as part-procedural and part-substantive. Cede, 634 A.2d at 360. Substantively, the

**42**

rule prohibits courts from second-guessing the good-faith business judgments of corporate management. <u>Id</u>. Procedurally, the rule creates a burden-shifting mechanism: a corporate decision carries a presumption of due care; but if the plaintiff demonstrates fraud, bad faith, or self-dealing by management, the presumption is rebutted and the burden shifts to the defendant to show that the challenged decision was fair to the corporation. <u>Id</u>. at 361.

Here, because Dorsey's actions regarding the promissory note, the CD & O land purchase, and the TD & O billboard lease were not disinterested, Davis is able to rebut the presumption of due care that would otherwise attach to these decisions. For reasons previously discussed in the duty-of-loyalty analysis, the court finds that the statute of limitations bars Davis's claim as it pertains to the promissory note but that genuine issues of material fact preclude summary judgment on her claim as it pertains to the CD & O land purchase and the TD & O billboard lease. Also, for reasons previously discussed,

**43**

Dorsey has not met his burden of showing that these decisions were fair to the corporation as a matter of law. Furthermore, the court concludes that a reasonable jury could find that these decisions violated Dorsey's duty of care to the corporation: that they were discharged either not in good faith, not with the care an ordinarily prudent person in a like position would exercise under similar circumstances, or not in a manner he reasonably believed to be in the best interests of the corporation.  1975 Ala. Code §§ 10-2B-8.30, -8.42.

In sum, the court concludes that Davis may proceed to a jury on a negligence theory regarding the same conduct she challenges on a duty-of-loyalty theory.  Accordingly, summary judgment on count 4 will be denied to the same extent it is denied on count 3.


### 5. Willful and Wanton Conduct

Davis's fifth claim is also a derivative claim on behalf of the corporation, this time for willful and wanton conduct in failing to exercise due care in his

management of the corporation.  Again, Davis's complaint indicates that the transactions and allegations at issue in her willful-and-wanton claim are the same as in her derivative fiduciary-duty claim and her negligence claim.

Alabama courts have recognized a claim for wanton breach of fiduciary duty brought derivatively on behalf of the corporation.  See Fulton v. Callahan, 621 So.2d 1235, 1244 (Ala. 1993).  Of critical importance here, however, is that this count of Davis's complaint alleges willful and wanton conduct.  The Alabama Supreme Court has held that a count alleging willful and wanton conduct, as opposed to willful or wanton conduct, requires proof of both prongs.  Lyons v. Walker Reg'l Med. Ctr., Inc., 868 So.2d 1071, 1089 (Ala. 2003) (citing Dickey v. Russell, 105 So.2d 649, 651 (Ala. 1958).  To prove willfulness, Davis must show that Dorsey violated his duty with a design or purpose to inflict injury on the corporation. Ex parte Nall, 879 So.2d 541, 546 (Ala. 2003).  To prove wantonness, Davis must show that Dorsey violated his duty with reckless indifference to the consequences of his

**45**

action or inaction.  <u>Armstrong Bus. Servs., Inc. v.</u>
<u>AmSouth Bank</u>, 817 So.2d 665, 679-80 (Ala. 2001).

Based on the evidence now before the court, a jury
could reasonably conclude that Dorsey acted wantonly, that
he violated his fiduciary duty to the corporation with
reckless indifference to the consequences of doing so.
However, there is no evidence to suggest that Dorsey did
so willfully, that he violated his duty with a design or
purpose to inflict injury on the corporation.  Dorsey was
majority-owner of I-65.  Because he was also the owner of
CD & O and TD & O, a jury could reasonably conclude that
he acted to benefit his other corporations with reckless
indifference to I-65's fate.  However, it is a different
matter entirely to conclude that it was his design or
purpose to harm I-65, and the record contains no evidence
to suggest that it was.

Therefore, because a claim for willful and wanton
conduct requires proof of both willfulness and wantonness,
and because the record is devoid of any genuine issue of

material fact as to willfulness, summary judgment will be granted on count 5.


### 6. Conversion

Davis's sixth claim is for conversion.  Unlike the claims for breach of fiduciary duty to the corporation, negligence, and willful and wanton conduct, Davis brings the conversion claim directly and individually, not derivatively on behalf of the corporation.  According to Davis's complaint, Dorsey's "misappropriation and use of the assets of the corporation ... constitutes the wrongful and willful conversion of personal property in which [Davis] has an interest."  Compl. ¶ 34.

Where a claim seeks recovery for harm done primarily to the corporation itself, it must be brought as a derivative action on behalf of the corporation and not directly by the shareholder.  James v. James, 768 So.2d 356, 358 (Ala. 2000).  Although Davis alleges that Dorsey's misappropriation of the corporation's assets constitutes the conversion of personal property in which

**47**

she has an interest, the Alabama Supreme Court has held
that the individual shareholder cannot "parlay a wrong
committed primarily against the corporation," Galbreath v.
Scott, 433 So.2d 454, 457 (Ala. 1983), into a direct cause
of action simply by stating that the injury to the
corporation was an injury to the individual as well.  See
also James, 768 So.2d at 358; Stallworth, 709 So.2d at
467.   Therefore, even if Davis's allegations regarding
Dorsey's misappropriation of corporate assets were
correct, Dorsey would be liable only to the corporation
itself, not to Davis simply because she is a shareholder.

Simply put, the record contains no evidence that
Dorsey converted Davis's personal assets.  Accordingly,
summary judgment will be granted on count 6.


### 7. Fraud

Davis's final claim is for fraud.  Like the conversion
claim, she has brought the fraud claim directly and
individually, not derivatively.  Fraud requires that the
plaintiff reasonably rely to her detriment on the

**48**

defendant's material misrepresentation of an existing fact. Ex parte Randall, ___ So.2d ____, 2007 WL 1229208 (Ala. 2007). "In fraud actions, damages must be shown because injury is an essential element of the cause of action." Gloor v. BancorpSouth Bank, 925 So.2d 984 (Ala. Ct. Civ. App. 2005).

In this case, there is no evidence that Dorsey made any misrepresentation that caused damage to Davis. Davis alleges that Dorsey committed fraud when he told Davis that she was personally liable for 30 % of the debt of the corporation, allegedly in an attempt to squeeze her out of the corporation. But Davis never actually sold her shares, and she remains in the same position she would have occupied had Dorsey never made the misrepresentation. The court discerns no other evidence in the record that Davis was defrauded by Dorsey. Summary judgment, therefore, will be granted on count 7 as well.

* * *

For the foregoing reasons, the court concludes that summary judgment is due to be granted in part and denied

**49**

in part.  Davis's non-time-barred derivative claims on behalf of I-65 against Dorsey for breach of fiduciary duty and negligence may proceed to trial.

Accordingly, it is ORDERED as follows:

(1) Defendant Richard M. Dorsey's motion for summary judgment (doc. no. 22) is granted on counts 1, 2, 5, 6, and 7 in full, and on counts 3 and 4 with respect to the promissory-note allegations, of plaintiff Donna Davis Dorsey's complaint.

(2) Said motion is denied as to counts 3 and 4 with respect to the CD & O land-purchase and TD & O billboard-lease allegations.

(3) Plaintiff Davis has until July 16, 2007, to join I-65 Properties, Inc. as an indispensable party to this action.  Liddy v. Urbanek, 707 F.2d 1222 (11th Cir. 1983).

DONE, this the 6th day of July, 2007.

    /s/ Myron H. Thompson    
UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2.    <u>**Time for Filing**</u>: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

    (a)    **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)    **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)    **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)    **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)    **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.    <u>**Format of the notice of appeal:**</u> Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.    <u>**Effect of a notice of appeal:**</u> A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).